**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| COURTNEY STANGL,<br><br>                     Plaintiff,<br><br>        v.<br><br>BIO-MEDICAL APPLICATIONS OF<br>NEW JERSEY,<br><br>                     Defendant. | Civil Action No. 25-11035 (JXN)(LDW)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is a motion by Defendant Bio-Medical Applications of New Jersey, Inc., improperly pled as "Fresenius Kidney Care" ("Defendant" or "Company"), to dismiss *pro se* Plaintiff Courtney Stangl's ("Plaintiff") Complaint ("Compl.") (Ex. A, ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10.) Also before the Court is Plaintiff's application to proceed *in forma pauperis* ("IFP Application"). (ECF No. 44.) Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully reviewed the Complaint and the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** and Plaintiff's IFP Application is **DENIED**.

I.    **BACKGROUND**[1]

     **A.  Assault Allegations**[2]

---

[1] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[2] Plaintiff includes new claims and factual allegations in her reply brief regarding a separate assault that purportedly occurred during a pre-employment blood draw. (ECF No. 12.) Because they were not included in Plaintiff's

Plaintiff alleges that on or around August 15, 2024, while Plaintiff was employed by the Company, one of Plaintiff's coworkers (the "Preceptor") punched Plaintiff "on the bridge of [her] nose" with a "closed fist." (Compl. at 2.) Plaintiff states that this incident occurred "on the clinic floor in front of patients" (*Id.*) and that she experienced immediate pain, followed by a black and blue bump and limited breathing. (*Id.*) Plaintiff reported this incident to Company management, who allegedly informed Plaintiff that she could either "resign" from her position or "stay with [her Preceptor] on the clinic floor." (*Id.*) Plaintiff asserts that this incident was a result of the Company's "negligence" in failing to abide by "their own policy and procedure." (ECF No. 12 at 1.) Plaintiff further alleges that she was "discriminated against by two different races," which, along with the assault by her Preceptor, "fueled a hostile work environment." (*Id.*)

### B. Procedural History

On or about December 31, 2024, Plaintiff filed this action in the Superior Court of New Jersey, Sussex County, Law Division, alleging: (i) a hostile work environment claim under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 et seq. (Count I); (ii) Assault (Count II); (iii) Battery (Count III); and (iv) Intentional Infliction of Emotional Distress (Count IV). (*See* generally Compl.). On June 13, 2025, Defendant removed to this Court. (ECF No. 1.)

On July 7, 2025, Defendant filed the instant motion to dismiss. (ECF No. 10.) Plaintiff opposed the motion (ECF No. 12), and Defendant replied in further support (ECF No. 16). On February 2, 2026, Plaintiff filed an IFP Application. In the interest of judicial economy, the Court

---

Complaint, the Court shall not consider these new claims or facts for purposes of the instant motion. *See Taylor v. Computer Sciences Corp.*, No. 12-01848, 2021 U.S. Dist. LEXIS 147774, 2021 WL 3464790, at *2 (D.N.J. Aug. 6, 2021) (concluding that, despite the plaintiff's pro se status, "the Court will of course not consider any factual allegations or claims raised for the first time in an opposition brief."); *Rosario v. Middlesex Cty. Prosecutor's Office*, Civil Action No. 23-20854 (RK) (JTQ), 2024 U.S. Dist. LEXIS 228623, at *1 n.2 (D.N.J. Dec. 18, 2024) (refusing to consider any factual allegations not contained in the pro se plaintiff's amended complaint.)

shall address both Plaintiff's IFP Application as well as Defendant's motion to dismiss.[3] This matter is now fully briefed and ripe for the Court to decide.[4]

## II.   <u>LEGAL STANDARD</u>

### A.  Rule 12(b)(6) - Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). A court must only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In analyzing the sufficiency of a complaint, the Third Circuit requires that courts engage in a three-part inquiry: (1) recite the elements that must be pled in order to state a claim; (2) determine which allegations in the complaint are merely conclusory and therefore need not be

---

[3] "A court reviewing an IFP application 'has the authority to dismiss a case at any time, . . . regardless of the status of a filing fee; that is, a court has the discretion to consider the merits of a case and evaluate an [IFP] application in either order or even simultaneously.'" *Casiano v. Colvin*, No. 23-21871, 2024 WL 2013950, at *1 (D.N.J. May 7, 2024) (quoting *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019)).

[4] On January 28, 2026, the Court ordered that Plaintiff respond to Defendant's discovery requests no later than February 27, 2026. (ECF No. 43.) Although Plaintiff has failed to respond to Defendant's discovery requests in contravention of the Court's order, the Court shall decide the instant motion to dismiss pursuant only to Rule 12(b)(6).

given an assumption of truth; and (3) "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## B.  Relaxed Pleading Standard for *Pro Se* Litigants

"[C]ourts must liberally construe pleadings that are filed *pro se*." *Beasley v. Howard*, 623 F. Supp. 3d 434, 439 (D.N.J. 2022) (citations omitted). Generally, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *see also Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) ("[The Court] will apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name.") However, "*pro se* litigants are not exempt from complying with federal pleading standards," *Beasley*, 623 F. Supp. 3d at 439 (citing *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010)), and "'still must allege sufficient facts in their complaints to support a claim.'" *Fake v. Pennsylvania*, No. 25-1798, 2025 U.S. App. LEXIS 24962, at *7 (3d Cir. Sep. 26, 2025) (quoting *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245, 58 V.I. 691 (3d Cir. 2013)); *Badger v. City of Philadelphia Off. Of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("Complaints filed pro se are construed liberally, but even 'a pro se complaint must state a plausible claim for relief.'") (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jordan v. Bates*, No. 21-16120, 2022 WL 2619853, at *2 (D.N.J. July 7, 2022) (quoting *Iqbal*, 556 U.S. at 678.) In reviewing a *pro se* litigant's complaint, the Court "need not . . . credit [the] *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Id.* at *4 (quoting *Morse v. Lower Merion School Dist*., 132 F.3d 902, 906 (3d Cir. 1997)).

4

### III.    DISCUSSION

#### A.  Hostile Work Environment Claim

"The Supreme Court of New Jersey has recognized that a hostile work environment claim is a variety of NJLAD discrimination." *Tavares v. Builders FirstSource Ne. Grp.*, Inc., No. 21-02964, 2023 WL 4248770, at *4 (D.N.J. June 29, 2023) (citing *Victor v. State*, 203 N.J. 383, 409, 4 A.3d 126, 141 (2010)). "To allege a hostile work environment claim under the NJLAD, a [p]laintiff must allege '(1) [he/she] is in a protected class; (2) [he/she] was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment.'" *Dillin v. Constr. & Turnaround Servs., LLC*, Civil Action No. 14-8124, 2015 U.S. Dist. LEXIS 124873, at *25 (D.N.J. Sep. 18, 2015) (quoting *Lopez v. Lopez*, 997 F. Supp. 2d 256, 274 (D.N.J. 2014)). When considering a hostile work environment claim, the Court must examine "the totality of the circumstances," including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.'" *Nuness v. Simon & Schuster, Inc.,* 221 F. Supp. 3d 596, 601 (D.N.J. 2016) (quoting *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 168 (3d Cir. 2013); *see also Caver v. City of Trenton,* 420 F.3d 243, 262-63 (3d Cir. 2005) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.") (citation omitted); "In evaluating a hostile work environment claim under both [Title VII] and the NJLAD, both the Supreme Court and the Third Circuit have been clear that 'offhand comments, and isolated incidents (unless extremely serious)' are not sufficient." *Nuness*, 221 F. Supp. 3d at 601 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *Worthy v. Unilever United States, Inc.,* No. 23-17570, 2024 WL 3326039, at *8 (D.N.J. July 8, 2024) ("In evaluating a hostile work environment claim under both

[Title VII] and the NJLAD, both the Supreme Court and the Third Circuit have been clear that 'offhand comments, and isolated incidents (unless extremely serious)' are not sufficient." *Nuness*, 221 F. Supp. 3d at 601 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Protected classes under the NJLAD include "race, color, sex, religion, national origin, [and] a number of other listed factors." *Correa v. Working Families United for N.J.*, No. 16-2217, 2018 U.S. Dist. LEXIS 159289, at *9 (D.N.J. Sep. 18, 2018) (quoting *Chambers v. Heidelberg USA, Inc.*, No. 04-0583, 2006 U.S. Dist. LEXIS 32334, 2006 WL 1281308, at *10 (D.N.J. May 5, 2006)); *see also* N.J.S.A. § 10:5-12(d). However, for each protected class, the plaintiff must establish "'by a preponderance of the evidence that the impermissible conduct would not have occurred but for [their] protected class.'" *Williams v. Hershey Co.*, No. 20-9394, 2021 WL 1686568, at *3 (D.N.J. Apr. 29, 2021) *(*quoting *Shockley v. Coll. of New Jersey*, No. A-3212-10T4, 2012 WL 996621, at *10 (N.J. Super. Ct. App. Div. Mar. 27, 2012)). This requires "a showing that it is more likely than not that the harassment occurred because of the plaintiff's [protected status]." *Id.* at *3 (quoting *Velez v. Rocktenn Co.*, No. A-4097-14T3, 2018 N.J. Super. Unpub. LEXIS 1821, 2018 WL 3613393, at *6 (N.J. Super. Ct. App. Div. July 30, 2018)); *see also Maddox v. City of Newark,* 50 F. Supp. 3d 606, 627 (D.N.J. 2014).

Here, Plaintiff has neither specified what protected class she belongs to, nor has she provided any indication that the alleged attack by her Preceptor, or her treatment by the Company, was motivated by her membership within any class. *See Matteo v. Bumble Bee Foods, LLC*, No. 14-435, 2014 U.S. Dist. LEXIS 114071, 2014 WL 4094281, at *5 (D.N.J. Aug. 18, 2014) (dismissing a hostile work environment claim where the plaintiff had not alleged that her employer's conduct "would not have occurred but for [the plaintiff's] protected status.") Additionally, although there are occasions when causation may be established "by the nature of

the harassment itself," *Williams*, 2021 WL 1686568, at *3, the conduct which Plaintiff describes is not of the type that would naturally establish but-for causation. *See e.g.*, *Watkins v. Nabisco Biscuit Co.*, 224 F.Supp.2d 852, 865 (D.N.J. 2002) (noting that "where conduct is clearly racial or racist in nature, the causal element will be satisfied.") (citing *Lehmann v. Toys ' R' Us, Inc.*, 132 N.J. 587, 605, 626 A.2d 445 (N.J. 1993)). Plaintiff's assertion that she was "discriminated against" (ECF No. 12 at 1) is conclusory and unsupported, and she provides no facts even suggesting that she was subjected to any individualized discrimination or animus based on any protected characteristic. *See Foy v. Wakefern Food Corp.,* Civ. A. No. 09-1683, 2010 U.S. Dist. LEXIS 1537, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010) ("A mere allegation that an adverse employment action was motivated by [a protected characteristic], without more, is exactly the type of broad conclusory allegation which the Supreme Court has found insufficient.") Even applying the liberal construction afforded to complaints filed by *pro se* plaintiffs, Plaintiff has failed to adequately plead a hostile work environment claim.

### B.  Intentional Tort Claims

Plaintiff appears to additionally allege intentional torts, including Assault, Battery, and Intentional Infliction of Emotional Distress. (*See* Compl. at 1-2.) The threshold question is therefore whether the Company can be held liable for an intentional tort committed by an employee (i.e., Plaintiff's Preceptor).

"Although as a general rule of tort law, liability must be based on personal fault," under the doctrine of *respondeat superior,* an employer will be held vicariously liable for the tortious conduct "of an employee causing injuries to third parties, if, at the time of the occurrence, the employee was acting within the scope of his or her employment." *Langley v. United Airlines, Inc.,* No. 23-20602, 2024 WL 3219295, at *12 (D.N.J. June 28, 2024) (citing *Carter v. Reynolds*, 815

A.2d 460, 463 (N.J. 2003)); *see also Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 622 (D.N.J. 2012) (citing *Di Cosala v. Kay*, 91 N.J. 159, 168-69, 450 A.2d 508 (1982)). The scope-of-employment analysis involves a two-part inquiry. *Williams v. Verizon New Jersey, Inc.,* No. 21-909350, 2020 WL 1227663, at \*12 (D.N.J. Mar. 12, 2020) (citing *Stroka v. United Airlines*, 364 N.J. Super. 333, 339, 835 A.2d 1247 (App. Div. 2003)). "First, there must be a time-and-place nexus between the employment and the incident. Second, there must be a causal connection between the employment and the incident itself." *Powell v. Verizon*, No. 19-8418, 2019 U.S. Dist. LEXIS 161552, at \*33-34 (D.N.J. Sep. 20, 2019) (citing *Coleman v. Cycle Transformer Corp*., 105 N.J. 285, 288-89, 520 A.2d 1341 (1986)). To demonstrate such a causal connection, "'[i]t must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the employment.'" *Id*. (quoting *Coleman*, 105 N.J. at 290).

Courts consider the following four factors when determining if an employee's conduct is within the scope of employment: "(1) whether the act is of a kind the employee is employed to perform; (2) whether the act occurs substantially within the authorized time limits; (3) whether the act is actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against another, whether the use of force is not unexpectable by the master." *Brijall*, 905 F. Supp. 2d at 622 (citing *Davis v. Devereux Found*., 209 N.J. 269, 303, 37 A.3d 469 (2012)); *see also* Restatement (Second) of Agency § 228. An employee's conduct is outside the scope of employment if it "is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *McAllister v. Greyhound Lines*, Civil Action No. 96-2225, 1997 U.S. Dist. LEXIS 16177, at \*10 (D.N.J. Oct. 7, 1997)

(quoting Restatement (Second) of Agency § 228(2)). In other words, "the definition of scope of employment is conjunctive" and "all the elements... must be satisfied." *Id*. at 10.

Generally, intentional torts do not fall within the scope of employment. *See Davis*, 209 N.J. at 303; *see also Wells Fargo Bank, N.A. v. Friedman*, No. A-1420-22, 2024 N.J. Super. Unpub. LEXIS 1484, 2024 WL 3319829, at *5 (N.J. Super. Ct. App. Div. July 8, 2024) ("Importantly, our Supreme Court has noted that [o]nly rarely will intentional torts fall within the scope of employment.") (internal quotation marks omitted). However, New Jersey courts "'have found employees' acts to be within the scope of their employment when their attempts to enforce their employer's rules instigated violence.'" *Brijall*, 905 F. Supp. 2d at 622 (quoting *Davis*, 209 N.J. at 305).

Here, while the Preceptor's alleged attack occurred within the authorized time and place limits of his/her employment, Plaintiff has not provided facts demonstrating a connection between the Preceptor's conduct and the work itself. Firstly, though Plaintiff has not described the circumstances around the attack in any detail, there is no indication that the Preceptor was hired to perform work even tangentially involving physical interaction with the Preceptor's fellow employees. In other words, the type of work that an employee at a medical facility is hired to perform does not involve physical altercations with other workers, nor are such altercations a natural or probable occurrence of such work. *See Pellecchia v. Princeton Univ. Bd. of Trs*., No. 23-21828, 2024 U.S. Dist. LEXIS 134749, at *11 (D.N.J. July 30, 2024) (granting motion to dismiss where the plaintiff had failed to allege that "the comments and other actions [forming the basis of the plaintiff's tort claims] were of the kind that [the defendant's] employees were employed to make.") To hold differently would subject all medical facilities to liability for essentially all tortious acts committed by their employees, however unprovoked or impulsive.

Further, Plaintiff has pled no facts demonstrating that the alleged assault was "actuated, at least in part, by a purpose to serve" the Company. *See Davis*, 209 N.J. at 307 (concluding that the employee's tortious act fell outside the scope of employment because "it was not by any measure 'actuated' by a purpose to serve [the employer].") (quoting Restatement (Second) of Agency §228(1)). Based on the facts provided, there is nothing in the record to suggest that the alleged assault was in furtherance of some task or goal of the Company, or that it was even related to the employees' work in any way. With respect to the fourth factor, it is not remotely "expectable" in a medical setting that intentional tortious conduct would occur between employees, *Davis*, 209 N.J. at 325-26 ("[T]here are some forms of employment that are more likely to bring an employee into a situation in which force will be used.") (citing Restatement (Second) of Agency § 245 comment a.), and there is no suggestion that, in assaulting Plaintiff, the Preceptor was attempting to enforce or effectuate Company rules or policies. *See Brijall*, 905 F. Supp. 2d at 622. In sum, Plaintiff has not provided sufficient facts for the Court to conclude that the Company should be held liable for any intentional tort by the Preceptor.

In conclusion, none of Plaintiff's claims are, as pleaded, sufficiently plausible to survive dismissal under Rule 12(b)(6), and Defendant's motion to dismiss shall be granted as to all counts.

### C. Dismissal Without Prejudice

Defendant has requested that the Court dismiss Plaintiff's Complaint with prejudice. (ECF No. 10 at 2.) However, dismissal with prejudice has been characterized as an "extreme" sanction, *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976), and the Court typically "must consider alternative sanctions before dismissing a case with prejudice." *Hildebrand v. Allegheny Cty.*, 923 F.3d 128, 136 (3d Cir. 2019) (citation omitted). Therefore, considering Plaintiff's *pro se* status, the Court shall dismiss Plaintiff's Complaint without

prejudice. Nevertheless, the Court advises Plaintiff that continued attempts to litigate these claims without curing the specific deficiencies identified herein may result in the imposition of sanctions, including but not limited to monetary penalties or a filing injunction. *See* Fed. R. Civ. P. 11(c).[5]

### D. IFP Application

Plaintiff has filed an IFP Application despite Defendant having already paid the filing fee when the case was removed to this Court. (*See* ECF No. 1.) IFP Applications are "designed to ensure that indigent litigants have meaningful access to the federal courts . . . ." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). To proceed in *forma pauperis*, "a plaintiff must file an affidavit that states all income and assets, inability to pay the filing fee, the 'nature of the action,' and the 'belief that the [plaintiff] is entitled to redress.'" *Whipple v. Davis*, No. 25-16572, 2025 U.S. Dist. LEXIS 204923, at *2 (D.N.J. Oct. 17, 2025) (quoting 28 U.S.C. § 1915(a)(1)). Because the filing fee has already been paid, and without reaching the sufficiency of Plaintiff's IFP application, the Court shall deny Plaintiff's IFP Application as moot. *See Ping Lin v. Holder*, 387 F.App'x 93, 97 (2d Cir. 2010) ("The pending motion to proceed in forma pauperis is DENIED as moot because the filing fee has already been paid.")

However, the Court acknowledges that IFP status is also a prerequisite to obtaining *pro bono* counsel or, should Plaintiff seek to add additional parties, securing service of process by the U.S. Marshall Service. *See Massaro v. Balicki*, No. 13-6958, 2016 U.S. Dist. LEXIS 103812, 2016 WL 4204547, at *5 (D.N.J. Aug. 8, 2016) ("[I]ndigence is a prerequisite for the appointment of

---

[5] Additionally, the Court notes that, prior to the issuance of this Opinion, Defendants renewed their request before Magistrate Judge Letta D. Wettre ("Judge Wettre") that this action be dismissed due to Plaintiff's continued failure to comply with discovery obligations and Court orders. (*See* ECF No. 59.) And in fact, the record reflects a history of noncompliance. However, because the Court resolves Defendant's Rule 12(b)(6) motion in this Opinion, it does not reach the merits of Defendant's discovery-related request at this time. However, the Court remains open to any motion by Defendant, or recommendation from Judge Wettre, seeking appropriate sanctions—up to and including dismissal—based on Plaintiff's failure to comply with discovery obligations or Court orders pursuant to Federal Rules of Civil Procedure 16(f)(1)(C), 37(b)(2), and/or 41(b).

pro bono counsel."); *see also* 28 U.S.C.S. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties [on behalf of a plaintiff granted IFP status]."). Therefore, if Plaintiff wishes to file an amended complaint after curing the deficiencies identified herein, she may submit a new IFP Application along with her amended complaint.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's IFP Application (ECF No. 44) is **DENIED**, Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 10) is **GRANTED**, and Plaintiff's Complaint (Ex. A, ECF No. 1) is **DISMISSED** *without prejudice*. To the extent Plaintiff can cure the deficiencies in her Complaint, the Court will afford Plaintiff the opportunity to file an amended complaint within thirty (30) days of this Opinion and the corresponding Order. If Plaintiff does not file an amended complaint within the time specified above, the Complaint will be dismissed with prejudice in its entirety. An appropriate Order accompanies this Opinion.

**DATED: 3/10/2026**

_____

**JULIEN XAVIER NEALS**
**United States District Judge**

12